Michael Faillace [MF-8436]
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
MONROY ESAU RAMOS MENDEZ,
*individually and on behalf of others similarly*
*situated,*

                            *Plaintiff,*

                -against-

94TH STREET PIZZERIA CORP.
(d/b/a FAMOUS ORIGINAL RAY'S
PIZZA), FORMAGGIO
CORPORATION (d/b/a FAMOUS
ORIGINAL RAY'S PIZZA), TONY
MANGANO, and ROSOLINO
MANGANO,

                     *Defendants.*
------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**

**ECF Case**

Plaintiff Monroy Esau Ramos Mendez ("Plaintiff Ramos" or "Mr. Ramos"), individually

and on behalf of others similarly situated, by and through his attorneys, Michael Faillace &

Associates, P.C., alleges upon information and belief, and as against each of Defendants 94th

Street Pizzeria Corp. (d/b/a Famous Original Ray's Pizza) ("Franchisee Defendant

Corporation"), Formaggio Corporation (d/b/a Famous Original Ray's Pizza) ("Franchisor

Defendant Corporation"), Tony Mangano ("Franchisor Individual Defendant"), Rosolino

Mangano ("Franchisee Individual Defendant") (collectively, "Defendants"), as follows:

**<u>NATURE OF ACTION</u>**

1.     Franchisee Defendant owns, operates or controls a pizzeria located at 1827 2nd Avenue, New York, NY 10128, operating under the trade name "Famous Original Ray's Pizza".

2.     Franchisee Defendant is franchised to operate Famous Original Ray's Pizza restaurants under contract with the Franchisor Defendant.

3.     Famous Original Ray's Pizza is a pizzeria owned by Tony Mangano and Rosolino Mangano, located at 1827 2nd Avenue, New York, NY 10128.

4.     Upon information and belief, Defendants Tony Mangano and Rosolino Mangano serve or served as owners, managers, principals or agents of Defendant Corporations and through this corporate entity operate the pizzeria.

5.     Plaintiff Ramos is a former employee of Defendants.

6.     Plaintiff Ramos was employed as a counter attendant, a cook, and ostensibly employed as a delivery worker, but he was required to spend several hours each day performing non-tipped duties unrelated to deliveries, including but not limited to sweeping and mopping, washing dishes, cutting vegetables and cheeses, preparing sauces, cleaning the walls, the basement, the kitchen, and the fridges, stocking soda, taking out the trash, deconstructing and tying boxes, and preparing deliveries (hereinafter, "non-delivery, non-tip duties").

7.     At all times relevant to this Complaint, Plaintiff Ramos worked for Franchisee Defendants in excess of 40 hours per week, without receiving the applicable minimum wage or appropriate overtime compensation for the hours over 40 per week that he worked.

8.     Rather, Franchisee Defendants failed to maintain accurate recordkeeping of his hours worked, failed to pay Plaintiff Ramos the applicable minimum wage, and failed to pay him

appropriately for any hours worked over 40, either at the straight rate of pay or for any additional overtime premium.

9.      Further, Franchisee Defendants failed to pay Plaintiff Ramos the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

10.     Franchisee Defendants employed and accounted for Plaintiff Ramos as a delivery worker, but in actuality his duties included greater or equal time spent performing the non-delivery, non-tipped functions such as those alleged above.

11.     From approximately June 2011 until on or about June 2015, regardless of duties, Franchisee Defendants paid Plaintiff Ramos and all other delivery workers at a rate that was lower than the required tip-credited rate.

12.     However, under both the FLSA and NYLL, Franchisee Defendants were not entitled to take a tip credit because Plaintiff Ramos' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. § 146).

13.     Upon information and belief, Franchisee Defendants employed the policy and practice of disguising Plaintiff Ramos' actual duties in payroll records to avoid paying Plaintiff Ramos at the minimum wage rate, and to enable them to pay Plaintiff Ramos at the lower tip-credited rate (which they still failed to do), by designating him as a delivery worker instead of a non-tipped employee.

14.     Upon information and belief, Franchisor Defendant knew or should have known of work performed by Plaintiff Ramos and similarly situated employees, and/or knew or should have known of the unlawful policies of requiring Plaintiff and other employees to work without providing the minimum wage, overtime, and spread of hours compensation required by federal

and state law and regulations; and upon information and belief, Franchisor Defendant had the power to stop the work and/or the violations, but did not do so.

15.    Defendants' conduct extended beyond Plaintiff Ramos to all other similarly situated employees.

16.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Ramos and other employees to work in excess of forty (40) hours per week without providing them the minimum wage and overtime compensation required by federal and state law and regulations.

17.    Plaintiff Ramos now brings this action on behalf of himself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law ("NYLL") §§190 and 650 *et seq*., and "overtime wage order" respectively codified at N.Y.C.R.R. Tit. 12 § 146 and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.    Plaintiff Ramos seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1531 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiff Ramos' state law claims is conferred by 28 U.S.C. § 1367(a).

20.    Venue is proper in this district under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their business in this district, and Plaintiff Ramos was employed by Defendants in this district.

## PARTIES

### *Plaintiff Monroy Esau Ramos Mendez*

21.    Plaintiff Ramos ("Plaintiff Ramos" or "Mr. Ramos") is an adult individual residing in New York County, New York.

22.    Plaintiff Ramos was employed by Defendants from approximately May 6, 2011 until on or about April 14, 2017.

23.    Plaintiff Ramos consents to being a party pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

### *Defendants*

24.    At all times relevant to this complaint Defendants own, operate, and/or control a chain of pizzerias around the United States, one of which is located at 1827 2nd Avenue, New York, NY 10128, operating under the trade name "Famous Original Ray's Pizza."

### *Franchisor Defendants*

25.    Upon information and belief, Formaggio Corporation is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its national headquarters at 133 Randolph Street, Brooklyn, New York 11237.

5

26.     Defendant Tony Mangano is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Tony Mangano is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations.

27.     Defendant Tony Mangano possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.

28.     Defendant Tony Mangano determined the wages and compensation of the employees of Defendants, including Plaintiff Ramos, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

29.     Upon information and belief, Franchisor Defendants grant franchises to operate Famous Original Ray's Pizza restaurants in New York and grant sublicenses to franchisees to use the Famous Original Ray's Pizza trademarks.

30.     Facts which demonstrate that Franchisor Defendant were Plaintiff Ramos' employers include:

   a.  Defendants all suffered or permitted Plaintiff and similarly situated employees to work.

   b.  Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiff and similarly situated employees.

   c.  Defendants each have an economic interest in the Famous Original Ray's Pizza location in which Plaintiff and similarly situated employees work.

   d.  Defendants all simultaneously benefitted from Plaintiff Ramos' work.

e. Defendants each had either functional and/or formal control over terms and conditions of work of Plaintiff and similarly situated employees.

31. Plaintiff and similarly situated employees performed work integral to each Defendant's operation.

*Franchisee Defendants*

32. Upon information and belief, 94th Street Pizzeria Corp. is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its franchised location at 1827 2nd Avenue, New York, NY 10128.

33. Defendant Rosolino Mangano is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Rosolino Mangano is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations.

34. Defendant Rosolino Mangano possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.

35. Defendant Rosolino Mangano determined the wages and compensation of the employees of Defendants, including Plaintiff Ramos, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS
*Defendants Constitute Joint Employers*

36. Defendants own, operate, or control a chain of pizzerias one of which is located in the Upper East Side section of Manhattan.

7

37.    Individual Defendants Tony Mangano and Rosolino Mangano and possess operational control over Defendant Corporations, possess an ownership interest in Defendant Corporations, and control significant functions of Defendant Corporations.

38.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method and share control over the employees.

39.    Each Defendant possessed substantial control over Plaintiff Ramos' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Ramos, and all similarly situated individuals, referred to herein.

40.    Defendants jointly employed Plaintiff Ramos, and all similarly situated individuals, and are Plaintiff Ramos' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

41.    In the alternative, Defendants constitute a single employer of Plaintiff Ramos and/or similarly situated individuals.

42.    Upon information and belief, individual defendants Tony Mangano and Rosolino Mangano operate Defendant Corporations as either alter egos of themselves, and/or fail to operate Defendant Corporations as legal entities separate and apart from themselves by, among other things:

(a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporations as separate and legally distinct entities;

(b)      defectively forming or maintaining Defendant Corporations by, among

other things, failing to hold annual meetings or maintaining appropriate corporate

records;

(c)      transferring assets and debts freely as between all Defendants;

(d)      operating Defendant Corporations for their own benefit as the sole or

majority shareholders;

(e)      operating Defendant Corporations for their own benefit and maintaining

control over these corporations as closed Corporations or closely controlled

entities;

(f)      intermingling assets and debts of their own with Defendant Corporations;

(g)      diminishing and/or transferring assets of Defendant Corporations to

protect their own interests; and

(h)      other actions evincing a failure to adhere to the corporate form.

43.      At all relevant times, Franchisee Defendant was Plaintiff Ramos' employer within

the meaning of the FLSA and New York Labor Law. Franchisee Defendant had the power to hire

and fire Plaintiff Ramos, controlled the terms and conditions of employment, and determined the

rate and method of any compensation in exchange for Plaintiff Ramos' services.

44.      Upon information and belief, Franchisor Defendant runs a business dependent on

its franchise and corporate-owned store selling and delivering food based on a prescribed mode.

As such, upon information and belief, Plaintiff Ramos' work is integral to Franchisor

Defendant's operations.

45.     Upon information and belief, Franchisor Defendant coordinated certain customer service options for all restaurants, corporate and franchise owned. For example, Franchisor Defendant has a central research and development team to create new products for Famous Original Ray's Pizza restaurants. *See* http://rayspizza.com/

46.     Upon information and belief, Franchisor Defendant has maintained control over many aspects of Franchisee Defendant's operations. For example, upon information and belief, Famous Original Ray's Pizza restaurants must conform to standard layout requirements. In addition, upon information and belief, Famous Original Ray's Pizza guides Franchisees on how to hire and train employees, as well as materials giving directions to employees as to how to perform their jobs.

47.     Upon information and belief, through its franchise agreement and in other ways, Franchisor Defendant set requirements for the operation of Franchise Defendants and enforced those requirements, in particular, requirements related to the work of Plaintiff Ramos and similarly situated employees. The requirements include, but are not limited to monitoring employee performance, specifying equipment, uniforms, and supplies for the use of Plaintiff Ramos and other similarly situated employees, and specifying the methods and procedures Plaintiff Ramos and other similarly situated employees use in preparing customer orders.

48.     Upon information and belief, through these requirements, Franchisor Defendant had the authority and exercised the authority to control, directly or indirectly, the work of Plaintiff Ramos and similarly situated employees.

49.    Upon information and belief, the Franchisor Defendant had the authority to require that Franchisee Defendant employ recordkeeping of the operations of Franchisee Defendant, including systems for tracking hours and wages and for retaining payroll records.

50.    Upon information and belief, these recordkeeping systems required by Franchisor Defendant were an instrument through which unlawful policies, patterns, and/or practices in this case were implemented.

51.    Upon information and belief, Franchisor Defendant had the right to inspect the facilities and operations of Franchisee Defendant.

52.    Upon information and belief, Franchisor Defendant had the right to audit all Franchisee records.

53.    Upon information and belief, Franchisor Defendant had the authority to control, directly or indirectly, the timekeeping and payroll practices of Franchisee Defendant.

54.    Upon information and belief, Franchisor Defendant knew or should have known of, and had the authority to exercise control over, the accuracy of records concerning the hours and wages of Plaintiff Ramos and similarly situated employees through the monitoring of Franchisees.

55.    Franchisor Defendant could have terminated the franchise agreements of Franchisee Defendant and caused Franchisee Defendant to cease operation of the franchise restaurants under certain circumstances, including in the event of violations of the law. Thus, upon information and belief, Franchisor Defendant have had the authority to stop violations of the labor law and, ultimately, to control the employment of Plaintiff Ramos and similarly situated employees, including, but not limited to, causing the termination of their employment.

11

Moreover, Franchisor Defendant had the power to induce compliance with applicable wage and hour laws by threatening to terminate a franchise agreement.

56.    In each year from 2011 to 2017, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

57.    In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. For example, numerous items that were used in the pizzeria on a daily basis, such as meats and cheeses, were produced outside of the State of New York.

*Individual Plaintiff*

58.    Plaintiff Ramos is a former employee of Defendants, employed as a counter attendant, a cook, and ostensibly employed as a delivery worker, who spent more than 20% of the time he worked each day performing the non-delivery, non-tip duties outlined above.

59.    Plaintiff Ramos seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

*Plaintiff Monroy Esau Ramos Mendez*

60.    Plaintiff Ramos was employed by Defendants from approximately May 6, 2011 until on or about April 14, 2017.

61.    Defendants employed Plaintiff Ramos as a counter attendant, a cook, and ostensibly employed him as a delivery worker.

62.    However, when employed as a delivery worker, Plaintiff Ramos was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

63.    Although Plaintiff Ramos was ostensibly employed as a delivery worker, he spent over 4 hours of each day performing non-delivery work throughout his employment with Defendants.

64.    Plaintiff Ramos regularly handled goods in interstate commerce, such as meats and cheeses produced outside of the State of New York.

65.    Plaintiff Ramos' work duties required neither discretion nor independent judgment.

66.    Throughout his employment with Defendants, Plaintiff Ramos regularly worked in excess of 40 hours per week.

67.    From approximately June 2011 until on or about June 2015, Plaintiff Ramos worked as a delivery worker from approximately 5:00 p.m. until on or about 5:00 a.m. or 6:00 a.m. Tuesdays through Sundays (typically 72 to 78 hours per week).

68.    From approximately June 2015 until on or about January 2016, Plaintiff Ramos worked as a counter attendant from approximately 10:00 a.m. until on or about 7:00 p.m. Tuesdays through Sundays (typically 54 hours per week).

69.    From approximately January 2016 until on or about April 14, 2017, Plaintiff Ramos worked as a cook from approximately 7:00 a.m. until on or about 3:00 p.m. Tuesdays through Thursdays and Sundays and from approximately 7:00 a.m. until on or about 5:00 p.m. Fridays and Saturdays (typically 52 hours per week).

70.    Throughout his employment with Defendants, Plaintiff Ramos was paid his wages in cash.

71.    From approximately June 2011 until on or about June 2015, Plaintiff Ramos was paid a fixed weekly salary of $300.00 per week.

72.    From approximately June 2015 until on or about January 2016, Plaintiff Ramos was paid a fixed weekly salary of $500.00 per week.

73.    From approximately January 2016 until on or about April 14, 2017, Plaintiff Ramos was paid a fixed weekly salary of $550.00 per week.

74.    Plaintiff Ramos' wages did not vary regardless of how many additional hours he worked in a week.

75.    For example, from approximately June 2011 until on or about June 2015, Defendants required Plaintiff Ramos to work an additional one hour past his scheduled departure time every work day without paying him any additional compensation for the additional time he worked.

76.    Plaintiff Ramos was never notified by Defendants that his tips would be included as an offset for wages.

77.    Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Ramos' wages.

78.    Defendants did not provide Plaintiff Ramos with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

79.    From approximately 2013 until on or about April 2017. Plaintiff Ramos was not required to keep track of his time nor to his knowledge did the Defendants utilize any time

14

tracking device, such as a time clock or punch cards that accurately reflected his actual hours worked.

80.    Defendants never provided Plaintiff Ramos with a written notice, in English and in Spanish (Plaintiff Ramos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

81.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramos regarding overtime and wages under the FLSA and NYLL.

82.    Defendants required Plaintiff Ramos to purchase "tools of the trade" with his own funds—including a two bicycles, one helmet, three lights, a chain and lock, bike pedals, and $400 in bike maintenance.

*Defendants' General Employment Practices*

83.    Defendants regularly required Plaintiff Ramos to work in excess of forty (40) hours per week without paying him the proper minimum wage, overtime, or Spread of Hours compensation.

84.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Ramos (and all similarly situated employees) to work in excess of forty (40) hours per week without paying him appropriate minimum wage and/or overtime compensation, as required by federal and state laws.

85.    At no time did Defendants inform their employees, including Plaintiff Ramos, that they had reduced their hourly wages by a tip allowance.

86.    Defendants failed to maintain a record of tips earned by Plaintiff Ramos for the deliveries he made to customers.

87.    Defendants habitually required their employees, including Plaintiff Ramos, to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

88.    Defendants required Plaintiff Ramos, and all other delivery workers, to perform general non-delivery, non-tipped tasks in addition to their primary duties as delivery workers.

89.    Plaintiff Ramos and all other similarly situated employees were employed ostensibly as tipped employees by Defendants, although their actual duties included greater or equal time spent performing non-tipped duties.

90.    Plaintiff Ramos  and all other delivery workers were not even paid at the required lower tip-credit rate by Defendants; however, under state law Defendants were not entitled to a tip credit because Plaintiff Ramos' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

91.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day . . . in which he has been assigned to work in an occupation in which tips are not customarily received."  (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

92.    In violation of federal and state law as codified above, Defendants classified Plaintiff Ramos and other delivery workers as tipped employees but did not pay them at the tip-credited rate, when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

16

93.     Defendants' pay practices resulted in Plaintiff Ramos not receiving payment for all his hours worked, resulting in Plaintiff Ramos' effective rate of pay falling below the required minimum and overtime wage rate.

94.     Plaintiff Ramos was paid his wages in cash.

95.     From approximately 2013 until on or about April 2017, Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

96.     By employing these practices, Defendants avoided paying Plaintiff Ramos the minimum wage for his regular hours and overtime compensation of time and a half for all of his hours worked in excess of forty (40) hours per week.

97.     Defendants failed to post required wage and hour posters in the health food restaurant, and did not provide Plaintiff Ramos with statutorily required wage and hour records or statements of his pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiff Ramos' relative lack of sophistication in wage and hour laws.

98.     Upon information and belief, this was done to disguise the actual number of hours Plaintiff Ramos, and similarly situated employees, worked and avoided paying them properly for their (1) full hours worked, (2) minimum wage, (3) overtime wages, and (4) spread of hours pay.

99.     Defendants failed to provide Plaintiff Ramos and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of

17

employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

100.    Defendants failed to provide Plaintiff Ramos and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language of Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

### FLSA COLLECTIVE ACTION CLAIMS

101.    Plaintiff Ramos brings his FLSA claims for minimum and overtime wages, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in his case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

102.    At all relevant times, Plaintiff Ramos and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay

provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wage, overtime pay of one and one-half times his regular rates for work in excess of forty (40) hours per workweek under the FLSA and willfully failing to keep records required by the FLSA.

103.    The claims of Plaintiff Ramos stated herein are similar to those of the other employees.

<u>**FIRST CAUSE OF ACTION**</u>
**VIOLATION OF THE FLSA MINIMUM WAGE PROVISIONS**

104.    Plaintiff Ramos repeats and realleges all paragraphs above as though fully set forth herein.

105.    At all times relevant to this action, Defendants were Plaintiff Ramos' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff Ramos (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

106.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

107.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

108.    Defendants failed to pay Plaintiff Ramos (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

19

109.    Defendants' failure to pay Plaintiff Ramos (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

110.    Plaintiff Ramos (and the FLSA Class members) were damaged in an amount to be determined at trial.

<u>**SECOND CAUSE OF ACTION**</u>
**VIOLATION OF THE FLSA OVERTIME PROVISIONS**

111.    Plaintiff Ramos repeats and realleges all paragraphs above as though fully set forth herein.

112.    At all times relevant to this action, Defendants were Plaintiff Ramos' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiff Ramos (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for his employment.

113.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

114.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

115.    Defendants, in violation of 29 U.S.C. § 207 (a)(1) of the FLSA, failed to pay Plaintiff Ramos (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

116.    Defendants' failure to pay Plaintiff Ramos (and the FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

117.    Plaintiff Ramos (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE NEW YORK MINIMUM WAGE RATE

118.    Plaintiff Ramos repeats and realleges all paragraphs above as though fully set forth herein.

119.    At all times relevant to this action, Defendants were Plaintiff Ramos' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff Ramos (and the FLSA Class members), controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

120.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Ramos (and the FLSA Class members) less than the minimum wage.

121.    Defendants' failure to pay Plaintiff Ramos (and the FLSA Class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

122.    Plaintiff Ramos (and the FLSA Class Members) were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE NEW YORK STATE
### LABOR LAW'S OVERTIME PROVISIONS

123.    Plaintiff Ramos repeats and realleges all paragraphs above as though fully set forth herein.

124.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.* and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Ramos (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

125.    Defendants failed to pay Plaintiff Ramos (and the FLSA Class members) in a timely fashion, as required by Article 6 of the New York Labor Law.

126.    Defendants' failure to pay Plaintiff Ramos (and the FLSA Class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

127.    Plaintiff Ramos (and the FLSA Class Members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

128.    Plaintiff Ramos repeats and realleges all paragraphs above as though fully set forth herein.

129.    Defendants failed to pay Plaintiff Ramos one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Ramos' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6.

130.    Defendants' failure to pay Plaintiff Ramos an additional hour's pay for each day Plaintiff Ramos' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

131.    Plaintiff Ramos was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE NOTICE AND RECORDKEEPING
## REQUIREMENTS OF THE NEW YORK LABOR LAW

132.    Plaintiff Ramos repeats and realleges all paragraphs above as though fully set forth herein.

133.    Defendants failed to provide Plaintiff Ramos with a written notice, in English and in Spanish (Plaintiff Ramos' primary language), of his rate of pay, regular pay day, and such other information as required by NYLL §195(1).

134.    Defendants are liable to Plaintiff Ramos in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE WAGE STATEMENT PROVISIONS
## OF THE NEW YORK LABOR LAW

135.    Plaintiff Ramos repeats and realleges all paragraphs above as though set forth fully herein.

136.    Defendants did not provide Plaintiff Ramos with a statement of wages with each payment of wages, as required by NYLL 195(3).

137.    Defendants are liable to Plaintiff Ramos in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
## (RECOVERY OF EQUIPMENT COSTS)

138.    Plaintiff Ramos repeats and realleges all paragraphs above as though set forth fully herein.

139.    Defendants required Plaintiff Ramos to pay, without reimbursement, the costs and

23

expenses for purchasing and maintaining equipment and "tools of the trade" required to perform

his job, such as bicycles, further reducing his wages in violation of the FLSA and NYLL.  29

U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

140.    Plaintiff Ramos was damaged in an amount to be determined at trial.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ramos respectfully requests that this Court enter judgment

against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of

notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the

pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the

FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and

associated rules and regulations under, the FLSA as to Plaintiff Ramos and the FLSA class

members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and

associated rules and regulations under, the FLSA as to Plaintiff Ramos and the FLSA class

members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and

associated rules and regulations under, the FLSA with respect to Plaintiff Ramos', and the FLSA

class members', compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA were willful

24

as to Plaintiff Ramos and the FLSA class members;

(f)     Awarding Plaintiff Ramos and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA, as applicable;

(g)     Awarding Plaintiff Ramos and the FLSA class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Ramos and the members of the FLSA Class;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Ramos and the members of the FLSA Class;

(j)     Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiff Ramos  and the members of the FLSA Class;

(k)     Declaring that Defendants violated the notice, recordkeeping, and wage statement requirements of the NYLL with respect to Plaintiff Ramos', and the FLSA Class members', compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiff Ramos', and the FLSA Class members', compensation, hours, wages; and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiff Ramos and the FLSA Class members;

(n)     Awarding Plaintiff Ramos and the FLSA class members damages for the amount of unpaid minimum and overtime wages, as well as spread of hours pay under the NYLL;

(o)     Awarding Plaintiff Ramos damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiff Ramos and the FLSA class members liquidated damages in an amount equal to one hundred percent (100%) of the spread of hours pay, minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(q)     Awarding Plaintiff Ramos and the FLSA class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiff Ramos and the FLSA class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ramos demands a trial by jury on all issues triable by a jury.

Dated: New York, New York

26

June 30, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

_____/s/ Michael Faillace_____
By:    Michael A. Faillace [MF-8436]
       60 East 42nd Street, Suite 4510
       New York, New York 10165
       (212) 317-1200
       *Attorneys for Plaintiff*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

June 21, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Monroy Esau Ramos Mendez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:          _Monroy Ramos_

Date / Fecha:               21 de junio de 2017